JAMES L. DENNIS, Circuit Judge,
dissenting:
In Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013), the Supreme Court held that a conviction under a Georgia criminal statute that criminalizes the gratuitous sharing of a small amount of marijuana, or possession with the intent to do so, does not categorically constitute “illicit trafficking in a controlled substance” and thus is not an “aggravated felony” for purposes of disqualifying a non-citizen for discretionary relief under the Immigration and Nationality Act (INA). The sole issue on appeal here is whether Martinez-Lugo’s prior conviction under the same Georgia statute constitutes a “drug trafficking offense” justifying the imposition of a sixteen-level offense enhancement — the highest possible sentencing enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2L1.2(b). Applying the principles and reasoning of Moncrieffe, I conclude that it does not.
Although the INA and U.S.S.G. § 2L1.2(b) are not directly coextensive, their application involves substantially similar principles ?#id concepts that must be carefully applied to avoid sentencing outcomes that are inconsistent with the plain text and purpose of U.S.S.G. § 2L1.2. Fur *206 ther, our circuit precedent in U.S.S.G. cases requires that we apply the same categorical approach that the Court used in Moncrieffe; thus we ought to carefully heed, rather than disregard, the teachings of the Moncrieffe Court in that respect. Moncrieffe makes clear that “a drug trafficking offense” does not include the sharing of a small amount of marijuana for no remuneration, or possession thereof with intent to do so. Consequently, a proper and full application of the categorical approach here demonstrates that, similar to the situation in Moncrieffe, the Georgia crime of conviction does not constitute a drag trafficking offense. Accordingly, Martinez-Lugo’s prior Georgia conviction does not constitute a federal “drag trafficking offense” and, therefore, may not be used to enhance his sentence under U.S.S.G. § 2L1.2. I therefore respectfully dissent from the majority’s decision and opinion to the contrary.
I.
A.
Martinez-Lugo pleaded guilty to being unlawfully present in the United States following removal, in violation of 8 U.S.C. § 1326(a). The district court determined that his base offense level was eight pursuant to U.S.S.G. § 2L1.2(a) and, after overruling Martinez-Lugo’s objection, found that he was subject to a sixteen-level offense enhancement under § 2L1.2(b)(l)(A)(i) based on his prior Georgia conviction for a crime designated as “possession with intent to distribute marijuana.” With the ■ sixteen-level enhancement, the district court calculated Martinez-Lugo’s Guideline advisory range as 46-57 months of imprisonment and sentenced him to 46 months in prison.
Section 2L1.2(b)(l)(A)(i) instructs, in relevant part, that district courts increase a defendant’s offense level by sixteen if “the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... a drag trafficking offense for which the sentence imposed exceeded 13 months.” USSG § 2L1.2(b)(l)(A)(i). The “Application Note” to § 2L1.2 defines a “drug trafficking offense” as, inter alia, “an offense under federal, state, or local law that prohibits the ... possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.” U.S.S.G. § 2L1.2(b)(l)(A)(i), Application Note § l(B)(iv).
In 2002, Martinez-Lugo pleaded guilty to a Georgia felony offense under Ga.Code Ann. § 16 — 13—30(j)(l), which provides that:
It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.
The charging documents presented to the district court established that Martinez-Lugo pleaded guilty to possession with intent to distribute marijuana, and was sentenced to serve three years in confinement and two years on probation. The Georgia code defines “distribute” as follows: “to deliver a controlled substance, other than by administering or dispensing it.” Ga.Code Ann. § 16-13-21(11). As the Supreme Court held in Moncrieffe, Georgia case law reveals that this is a broad definition and that distribution does not necessarily require a sale. See Dorsey v. State, 212 Ga.App. 479, 480, 441 S.E.2d 891, 892 (1994) (“[A] distribution may or may not be a sale.”); see also Capers v. State, 273 Ga.App. 427, 428, 615 S.E.2d 126, 128 (2005) (“[T]he offense of distribution of [a controlled substance] does not require that the offender receive a payment.”).
*207 In Moncrieffe, the Court analyzed whether possession with intent to distribute under Ga.Code Ann. § 16 — 13—30(j)(l) constitutes an “aggravated felony” under the Immigration and Nationality Act (INA). 133 S.Ct. at 1682-83. The relevant INA provision, 8 U.S.C. § 1101(a)(43), defines an aggravated felony as, inter alia, a conviction for “illicit trafficking in a controlled substance,” as defined in 18 U.S.C. § 924(c)(2). Id. at 1683. Section 924(c)(2), in turn, defines “drug trafficking crime” as, inter alia, crimes that qualify as felonies punishable under the federal Controlled Substances Act (CSA). Id. A felony under the CSA is, generally, any offense listed therein that is punishable by imprisonment for more than one year. Id. It may be a felony under the CSA to possess with the intent to distribute a controlled substance (including marijuana); however, this offense is punishable only as a misdemeanor under the CSA if it involves only the distribution of “a small amount of marihuana for no remuneration.” Id.; see 21 U.S.C. §§ 841(b), 844. In other words, if the crime involves only a small amount of marijuana, without an exchange of money or other consideration, then the offense is treated as simple drug possession and characterized as a misdemeanor offense under the CSA. Id. at 1686.
Examining the manner in which Georgia courts have prosecuted individuals under Ga.Code Ann. § 16 — 13—30(j)(l), the Moncrieffe Court concluded that because a defendant under this Georgia statute may be prosecuted for giving away a small amount of marijuana for no remuneration, it is not categorically- an aggravated felony. The Court explained that
the fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved. It is possible neither was; we know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, see, e.g., Taylor v. State, 260 Ga.App. 890, 581 S.E.2d 386, 388 (2003) (6.6 grams), and that “distribution” does not require remuneration, see, e.g., Hadden v. State, 181 Ga.App. 628, 628-629, 353 S.E.2d 532, 533-534 (1987).
Id. at 1686. Accordingly, “Moncrieffe’s conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not ‘necessarily’ involve facts that correspond to an offense punishable as a felony,” and thus, “under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony.” Id. at 1686-87. In conclusion, the Court then warned that courts should be wary of the Government’s attempts to classify a low-level drug offense as “illicit trafficking in a controlled substance” and thus an “aggravated felony,” reasoning that to classify “[sjharing a small amount of marijuana for no remuneration, let alone possession with intent to do so,” as a trafficking offense “defies ‘the commonsense conception’ of th[at] term[]” because “the everyday understanding of ‘trafficking’ ... ordinarily means some sort of commercial dealing.” Id. at 1693 (some internal quotation marks and ellipses omitted). Thus, under the categorical approach and the teachings of Moncrieffe, it would be error to conclude that Martinez-Lugo’s conviction under Ga.Code Ann. § 16 — 13—30(j)(l), which criminalizes conduct such as the social sharing or giving away of small amounts of marijuana for no remuneration, is necessarily and categorically a drug trafficking offense.
B.
There is an ironic and illogical inconsistency in the ramifications produced by the *208 majority’s decision today. Under U.S.S.G. § 2L1.2(b), defendants convicted of illegal reentry into the United States are exposed to greater sentences if they reentered the country after having been convicted of pri- or crimes. The section operates on a graduated scale: the more serious the pri- or conviction, the greater the increased sentencing exposure. After the majority’s decision, that structure comes crumbling down. For the reasons that will be explained below, Moncrieffe dictates that Martinez-Lugo’s prior Georgia conviction is not serious enough to qualify for the relatively minor eight-level enhancement under U.S.S.G. § 2L1.2(b)(l)(C). And yet, according to the majority of this panel, Martinez-Lugo’s prior Georgia conviction is serious enough to invoke the sixteen-level enhancement under § 2L1.2(b)(1)(A)(i), the highest enhancement available under this provision.
Under U.S.S.G. § 2L1.2(b)(l)(C), a defendant previously deported after conviction of an “aggravated felony” receives an eight-level offense enhancement. The Sentencing Commission defines an aggravated felony for purposes of § 2L1.2(b)(l)(C) as the “meaning given that term in 8 U.S.C. § 1101(a)(í3) ” — the INA provision that the Supreme Court analyzed in Moncrieffe. See U.S.S.G. § 2L1.2, Application Note (3)(A) (emphasis added); Moncrieffe, 133 S.Ct. at 1683 (analyzing 8 U.S.C. § 1101(a)(43) to determine whether Moncrieffe was previously convicted of an “aggravated felony” under the INA). Thus, Martinez-Lugo’s prior conviction under the identical Georgia statute cannot trigger an eight-level offense enhancement under U.S.S.G. § 2L1.2(b)(l)(C) for a prior aggravated felony conviction — Moncrieffe held that this Georgia statute is not an “aggravated felony” as defined in 8 U.S.C. § 1101(a)(43). It defies logic, then, to conclude that although Martinez-Lugo’s prior Georgia conviction could not amount categorically to an aggravated felony-and thus cannot trigger an eight-level enhancement under U.S.S.G. § 2L1.2 — that his prior conviction, possibly for sharing a small amount of marijuana gratuitously, nonetheless categorically constitutes a “drug trafficking offense” worthy of a sixteen-level offense enhancement under U.S.S.G. § 2L1.2.
The majority attempts to justify the anomaly of imposing such a harsh sentencing enhancement on individuals convicted under a statute that penalizes gratuitous sharing of small amounts of marijuana by noting that the ultimate legal question presented in this case — whether an enhancement under U.S.S.G. was properly imposed — is different from the question at issue in Moncrieffe — whether the immigration courts properly found that the petitioner was previously convicted of an “aggravated felony” under the INA, and that the Sentencing Commission is free to treat convictions of “drug trafficking offenses” more harshly than “aggravated felony” convictions, regardless of whether “that determination is the best policy decision or not.” Maj. Op., at 205. However, upholding a sixteen-level offense enhancement for a prior conviction under a statute that the Supreme Court has explained may be violated by mere social sharing of small amounts of marijuana for no remuneration flouts the very purpose of this U.S.S.G. provision. As this court has explained, “[t]he purpose of the sixteen-level enhancement is to ensure that a defendant who reenters the United States illegally after having committed a serious crime is punished more severely than a defendant who reenters the country illegally without having committed a serious crime.” United States v. Bustillos-Pena, 612 F.3d 863, 867 (5th Cir.2010) (emphasis added). The Court in Moncrieffe makes it clear that Martinez-Lugo’s prior Georgia conviction *209 penalizes conduct that may amount to no more than social sharing of a small amount of marijuana for no remuneration — a crime punishable as a misdemeanor under federal law, and thus not “serious” enough to warrant even an eight-level offense enhancement as an aggravated felony. The majority nonetheless condones the sixteen-level enhancement here, which is imposed upon defendants who have been deported after being convicted of very serious crimes, including, inter alia, human trafficking offenses and national security or terrorism offenses, see U.S.S.G. § 2L1.2(b)(l)(A), and is double that which is imposed upon defendants with prior “aggravated felony” convictions. See U.S.S.G. § 2L1.2(b)(l)(A)-(C).
By requiring sentencing courts to treat non-commercial social users of marijuana like serious drug traffickers, the majority’s decision creates an untenable inconsistency that is irreconcilable with Moncrieffe.
II.
The majority might have avoided its error had it properly and fully applied the categorical approach required by circuit precedents and elaborated upon in Moncrieffe.
The Application Notes corresponding to U.S.S.G. § 2L1.2 provide a list of enumerated offenses that qualify as “drug trafficking” offenses for purposes of § 2L1.2(b)(l)(A), including the possession with intent to distribute a controlled substance. The majority correctly acknowledges that the mere “fact that MartinezLugo’s Georgia conviction has the same label — ‘possession with intent to distribute’ — as an enumerated offense listed in the Guidelines definition of ‘drug trafficking offense’ does not automatically warrant application of the enhancement.” Maj. Op., at 202. Our precedents plainly instruct that rather than allowing state-law labels to control, “[w]e employ a categorical approach to determine whether a prior conviction qualifies as a drug trafficking offense under § 2L1.2.” United States v. Henao-Melo, 591 F.3d 798, 802 (5th Cir. 2009); see also United States v. Teranr-Salas, 767 F.3d 453, 458 (5th Cir.2014); United States v. Reyes-Mendoza, 665 F.3d 165, 168 (5th Cir.2011); United States v. Garza-Lopez, 410 F.3d 268, 273 (5th Cir. 2005).[30]
*210 A.
Under the Taylor-Shepard[31] categorical approach, “we look ‘not to the facts of the particular prior case,’ but instead to whether ‘the state statute defining the crime of conviction’ categorically fits within the ‘generic’ federal definition of a corresponding [drug trafficking offense].” Moncrieffe, 133 S.Ct. at 1684 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)). To determine the “generic” federal definition of a crime we must view the federal offense “in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison.” Moncrieffe, 133 S.Ct. at 1684. We use a “plain-meaning approach when determining the ‘generic, ' contemporary meaning’ of non-common-law offense categories enumerated in federal sentencing enhancements.” United States v. Rodriguez, 711 F.3d 541, 552 (5th Cir.2013) (en banc).
“[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense ‘necessarily’ involved ... facts equating to [the] generic [federal offense].” Moncrieffe, 133 S.Ct. at 1684 (citing Shepard v. United States, 544 U.S. 13, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion)). “Because we examine what the state conviction necessarily involved, not the facts underlying the'case, we must presume that the conviction ‘rested upon [nothing] more than the least of th[e] acts’ criminalized, and then determine whether even those acts are encompassed by the generic federal offense.” Id. (quoting Johnson v. United States, 559 U.S. 133, 137, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010)); see also United States v. Carrasco-Tercero, 745 F.3d 192, 198 (5th Cir.2014) (quoting Moncrieffe, 133 S.Ct. at 1685); Sarmientos v. Holder, 742 F.3d 624, 628 (5th Cir.2014).[32] As we have previously explained on review of a district court’s sentencing enhancement pursuant to § 2L1.2(b)(l), the essential inquiry involved requires us to determine “whether the least-culpable act that would violate [the state criminal statute] would also qualify as ‘drug trafficking’ for purposes of § 2L1.2.” Reyes-Mendoza, 665 F.3d at 167. “If [the state law criminal statute] is broad enough to criminalize conduct that would not constitute trafficking *211 under § 2L1.2, then the sentence should not have been enhanced.” Id.
Accordingly, I cannot agree with the majority’s contention that Moncriejfe supports the district court’s sentencing enhancement here merely because the Court in Moncrieffe, at first, found that the Georgia state law’s elements, without benefit of the state courts’ interpretation of them, superficially appear to be consistent with the elements of a CSA offense. See Maj. Op., at 203. Certainly, the Court in Moncrieffe found that “[t]here is no question that it is a federal crime to ‘possess with intent to ... distribute ... a controlled substance,’ 21 U.S.C. § 841(a)(1), one of which is marijuana, § 812(c).” Moncriejfe, 133 S.Ct. at 1685. However, that finding did not end the Moncriejfe Court’s inquiry, nor may it end ours. Id. (“So far, the state and federal provisions correspond. But this is not enough[.]”). The Moncrieffe Court concluded only that the Georgia law corresponds to a crime penalized by the CSA and says nothing to suggest that this finding alone signifies that the Georgia crime is categorically a “drug trafficking” offense. As we have explained, “[n]ot all felony drug offenses are drug trafficking offenses.” Henao-Melo, 591 F.3d at 805. It is undisputed that the CSA also penalizes simple possession of a controlled substance, see 21 U.S.C. § 844(a), which is excluded from the Guideline’s definition of a “drug trafficking offense.” See U.S.S.G. § 2L1.2; see also Henao-Melo, 591 F.3d at 805 (citing United States v. Caicedo-Cuero, 312 F.3d 697, 707 (5th Cir.2002) (“[The definition of ‘drug trafficking offense’ in § 2L1.2] clearly excludes simple possession of a controlled substance.”)). Indeed, ending the inquiry prematurely, after only a superficial comparison of the offenses’ elements alone, ignores both this court’s and the Supreme Court’s instructions that we must analyze Georgia state law to determine how the state courts interpret their own statute and whether the state-law offense criminalizes conduct broader than the generic federal offense. See Moncrieffe, 133 S.Ct. at 1684; see also Reyes-Mendoza, 665 F.3d at 169 (analyzing California courts’ interpretation of the term “manufacture” to determine whether the defendant’s prior California conviction for manufacturing a controlled substance in violation of Section 11379.6 of the California Health and Safety Code is categorically a drug trafficking offense under U.S.S.G. § 2L1.2).
B.
Applying the Taylor-Shepard categorical approach to this case, we should conclude that the Georgia statute under which Martinez-Lugo was convicted criminalizes conduct that does not categorically amount to “drug trafficking” and that his sentence, improperly enhanced under U.S.S.G. § 2L1.2(b) by sixteen offense levels for conviction of a prior drug trafficking offense, should therefore be vacated.
Preliminarily, because the Georgia statute at issue is a divisible one, the district court properly consulted the charging documents and the final judgment to determine which subsection of the Georgia statute Martinez-Lugo was convicted under, and concluded he was convicted of possession with intent to distribute marijuana. From there, we apply the categorical approach and determine whether, “assuming] the defendant committed the least culpable act to satisfy the conviction,” the elements of the Georgia conviction for possession with intent to distribute marijuana are necessarily encompassed within the definition of a “drug trafficking offense” under § 2L1.2. See Carrasco-Tercero, 745 F.3d at 198 (quoting Moncrieffe, 133 S.Ct. at 1685).
*212 In other words, we must compare the “least-culpable act” that would constitute possession with intent to distribute under Ga.Code Ann. § 16 — 13—30(j)(l) and determine whether such conduct “would also qualify as ‘drug trafficking’ for purposes of § 2L1.2.” Reyes-Mendoza, 665 F.3d at 167. Moncrieffe makes clear that Martinez-Lugo’s prior conviction-possession with intent to distribute under Ga.Code Ann. § 16-13-30(j)(l) — penalizes the possession of small amounts of marijuana with the intent to distribute or give away marijuana for no remuneration. See Moncrieffe, 133 S.Ct. at 1686 (“[W]e know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, see, e.g., Taylor v. State, 260 Ga.App. 890, 581 S.E.2d 386, 388 (2003) (6.6 grams), and that ‘distribution’ does not require remuneration, see, e.g., Hadden v. State, 181 Ga.App. 628, 628-629, 353 S.E.2d 532, 533-534 (1987).”). Thus, Moncrieffe dictates the first step of our categorical analysis here because the Court found that defendants in Georgia may be convicted of possession with intent to distribute marijuana under Ga.Code Ann. § 16 — 13—30(j)(l) for the giving away or social sharing of marijuana for no remuneration — the “least culpable act” punishable under this provision. Id.
Next, we must determine whether “even th[e]se acts are encompassed by the generic federal offense.” Moncrieffe, 133 S.Ct. at 1684 (quoting Johnson, 559 U.S. at 137, 130 S.Ct. 1265). In defining the generic federal offense, we use a “plain-meaning approach.” See Rodriguez, 711 F.3d at 552. Moncrieffe instructs that the plain-meaning or “everyday understanding of ‘trafficking,’ ... means some sort of commercial dealing.” Moncrieffe, 133 S.Ct. at 1693. It follows that the plain meaning of the generic federal drug trafficking offense of possession with intent to distribute a controlled substance involves possession with the intent to distribute for remuneration or with the intent to engage in some form of commercial dealing. Martinez-Lugo’s conviction under Ga.Code Ann. § 16 — 13—30(j)(l), which criminalizes conduct that does not necessarily amount to the distribution of marijuana for remuneration, is therefore broader than the generic, contemporary meaning of a drug trafficking offense of possession with intent to distribute and therefore cannot support the sixteen-level sentence enhancement under § 2L1.2(b)(l)(A)(i).
Despite the majority’s position to the contrary, the Court has repeatedly advised that we must consider the “everyday understanding” of the term “trafficking” when determining whether a state law is a categorical match with an enumerated “trafficking” offense, and that we should be wary of the Government’s arguments that low-level drug offenses, such as sharing small amounts of marijuana for no remuneration, are “aggravated felonies” or “trafficking” offenses. See Moncrieffe, 133 S.Ct. at 1693 (reasoning that the Government’s attempt to classify low-level drug offenses as “illicit trafficking” offenses and thus “aggravated felonies” is an approach that “defies the commonsense conception of these terms”) (quoting Carachuri-Rosendo v. Holder, 560 U.S. 563, 574, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (quoting Lopez v. Gonzales, 549 U.S. 47, 56, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006))) (internal quotation marks omitted). Rather than ignore the term “trafficking” when we analyze whether the Georgia statute here is a drug trafficking offense, “[t]he everyday understanding of ‘trafficking’ should count for a lot here ... [a]nd ordinarily ‘trafficking’ means some sort of commercial dealing.” Lopez, 549 U.S. at 43, 127 S.Ct. 469; see also Carachuri-Rosendo, 560 U.S. at 573, 130 S.Ct. 2577. To decline to consider the meaning of the *213 term “trafficking” in determining the eommonsense, generic meaning of the drug trafficking offense of possession with intent to distribute marijuana would ignore the “the cardinal rule that statutory language must be read in context.” Lopez, 549 U.S. at 56, 127 S.Ct. 625; see also Jones v. United States, 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (“Statutory language must be read in context and a phrase ‘gathers meaning from the words around it.’”) (internal citation omitted). Here, the majority stops short of reading the relevant Guideline provision as a whole and thus fails to acknowledge the ordinary, everyday meaning of the drug trafficking offense of possession with intent to distribute as requiring some sort of commercial dealing, which is conveyed by inclusion of the term “trafficking.” As the Court has explained, “our interpretive regime reads whole sections of a statute together to fix on the meaning of any one of them[.]” Id. The majority has not provided a satisfactory reason that these same considerations and principles of statutory construction do not apply to a U.S.S.G. case, like this case, where we are tasked with determining whether a prior state-law offense is categorically a “drug trafficking” offense.
* * *
In sum, applying the categorical approach, as we must, I would conclude that Martinez-Lugo’s prior Georgia conviction, which may have involved nothing more than sharing a small amount of marijuana with no intention to seek remuneration, was not a drug trafficking offense, and therefore did not warrant the sixteen-level offense enhancement under U.S.S.G. § 2L1.2(b), which ultimately led to his sentence of 46 months of imprisonment. In finding to the contrary, the majority fails to fully and properly apply the categorical approach, misreads and disregards the principles and holdings of Moncrieffe, and condones an application of U.S.S.G. § 2L1.2 that is inconsistent with the clear purpose of that provision. I therefore respectfully dissent.

. Our sister circuits likewise apply the categorical approach to determine whether a pri- or state law conviction constitutes a federal offense for purpose of sentencing enhancement under the Guidelines. . See, e.g., United States v. Torre-Jimenez, 771 F.3d 1163, 1165 (9th Cir.2014) ("We apply the categorical and modified categorical approaches described in Taylor, ... to determine whether a defendant's prior conviction satisfies U.S.S.G. § 2L1.2(b)(l)(A).”); United States v. Peterson, 629 F.3d 432, 435 (4th Cir.2011) ("Courts employ a categorical approach in determining whether a prior conviction will lead to a sentence enhancement under the Sentencing Guidelines.”); United States v. Palomino Garcia, 606 F.3d 1317, 1328 (11th Cir.2010) ("Although Taylor and Shepard were ACCA cases, we have employed their 'categorical approach' in determining whether a prior offense qualifies for an enhancement under the Guidelines.”); United States v. Torres-Romero, 537 F.3d 1155, 1158 (10th Cir.2008) ("When a defendant contests whether his prior conviction constitutes a drug trafficking offense the sentencing court is generally required to follow the categorical approach adopted in Taylor ... and Shepard "); United States v. Montanez, 442 F.3d 485, 492 (6th Cir.2006) (applying the categorical approach and reasoning that "[h]ow a state titles its statutory provisions, however, is not determinative of what actual statute a defendant was convicted under for federal sentencing purposes.”); United States v. Femandez-Antonia, 278 F.3d 150, 161-62 (2d Cir.2002) ("A sentencing court employs a 'categorical approach’ in determining whether a conviction under state law fits within the federal sentencing guidelines and thus merits an offense level enhancement.").

. See Taylor v. United States, 495 U.S. 575, 598-99, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); Shepard v. United States, 544 U.S. 13, 24-26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion).

. If the pertinent state statute at issue has disjunctive elements, a court applies a modified categorical approach to ascertain which of the disjunctive elements formed the basis of the conviction. United States v. Miranda-Ortegon, 670 F.3d 661, 663 (5th Cir.2012). In making this determination, a court may consider limited sources, such as the “charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.” Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). If the statute cannot be narrowed, a court considers "whether the least culpable act constituting a violation of that statute constitutes” a drug trafficking offense for purposes of § 2L1.2(b)(l)(A)(i). United States v. Moreno-Florean, 542 F.3d 445, 449 (5th Cir.2008) (internal quotation marks and citations omitted). If the modified categorical approach does narrow the statute to a specific subsection, then the court engages in an inquiry as' if applying the basic categorical approach: it compares the elements of the narrowed statute to the "generic crime” to determine whether it qualifies for enhancement, looking to the elements of the crime, not the underlying facts. See Descamps, 133 S.Ct. at 2283. As the Court has explained, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.” Id. at 2285 (citations omitted).