# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40924

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN FRANCISCO MARTINEZ-LUGO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:

We *sua sponte* withdraw the prior panel opinion, *United States v. Martinez-Lugo*, 773 F.3d 678 (5th Cir. 2014), and substitute the following:

Defendant-Appellant Juan Francisco Martinez-Lugo appeals from the district court's application of a 16-level sentence enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) for his having been removed following a conviction for a drug trafficking offense for which the sentence was greater than 13

No. 13-40924

months based upon Martinez's 2002 Georgia conviction for possession with intent to distribute marijuana. For the reasons set out below, we AFFIRM the sentence.

## FACTS AND PROCEEDINGS

Martinez-Lugo was charged in an indictment with being unlawfully present in the United States following removal. He pleaded guilty to the indictment without the benefit of a written plea agreement. In the Presentence Report ("PSR"), the Probation Office determined that Martinez-Lugo's base offense level was eight. It applied a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) for having been removed following a conviction for a drug trafficking offense for which the sentence was greater than 13 months. The recommendation was based on Martinez-Lugo's 2002 Georgia conviction for possession with intent to distribute marijuana, for which Martinez-Lugo was sentenced to five years of imprisonment with two of those years probated.

Applying a two-level reduction for acceptance of responsibility, the Probation Office determined that Martinez-Lugo's total offense level was 22. Based upon Martinez-Lugo's total offense level of 22 and criminal history category of IV, it calculated that his guidelines sentence range was 63–78 months of imprisonment and that his guidelines sentence range would be 57–71 months of imprisonment if he were granted an additional one-level reduction for acceptance of responsibility. As an attachment to the PSR, the Probation Office included the accusation, guilty plea documentation, and final judgment from Martinez-Lugo's 2002 conviction, and those documents showed

2

No. 13-40924

that Martinez-Lugo had been convicted under GA. CODE ANN. § 16-13-30(j)(1) (2002).

When the case was first called for sentencing, Martinez-Lugo raised an objection to the 16-level enhancement on the ground that his prior Georgia conviction did not qualify as a "drug trafficking offense" under the Supreme Court's reasoning in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), which considered the same Georgia statute. The district court granted Martinez-Lugo a continuance, and he subsequently filed a written objection to the PSR on that basis.

The district court overruled Martinez-Lugo's objection. The Government moved for the additional one-level reduction for acceptance of responsibility, and the district court granted the motion. The district court additionally ruled that Martinez-Lugo's criminal history category was "artificially exaggerated" and that a criminal history category of III was more accurate. Based upon a total offense level of 21 and criminal history category of III, it determined that Martinez-Lugo's guidelines sentence range was 46–57 months of imprisonment. It sentenced Martinez-Lugo to 46 months of imprisonment without a term of supervised release. Martinez-Lugo filed a timely notice of appeal on the basis that the district court misapplied the 16-level sentence enhancement for a "drug trafficking offense" under § 2L1.2(b)(1)(A)(i).

**STANDARD OF REVIEW**

Martinez-Lugo is not the first appellant to argue that, following *Moncrieffe*, a conviction "for giving away or offering to give away [*i.e.*, for no remuneration] a controlled substance" does not constitute "a drug trafficking

3

offense under . . . § 2L1.2(b)(1)(A)(i)."[1] He is, however, the first to have preserved the error by raising the objection at the district court, so we are not limited to plain error review, which must deny relief where, as here, "the issue is subject to reasonable debate and the error is not readily apparent."[2]

Because Martinez-Lugo preserved his objection to the sentence enhancement, "[w]e review the district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error."[3] "We review a district court's conclusion that a prior state conviction constitutes a drug trafficking offense *de novo*."[4]

## DISCUSSION

On appeal, Martinez-Lugo renews his argument that his prior conviction under GA. CODE ANN. § 16-13-30(j)(1) (2002) does not constitute a "drug trafficking offense" for purposes of applying the sentence enhancement of § 2L1.2(b)(1)(A)(i). Martinez-Lugo points to the Supreme Court's emphasis in *Moncrieffe* that "trafficking" generally requires remuneration,[5] and he argues that the Georgia statute is overbroad because it also criminalizes possession with intent to distribute for no remuneration.[6] On the other hand, the

---

[1] *United States v. Perez-Melgarejo*, 552 F. App'x 327, 328 (5th Cir. 2014); *see also United States v. Gomez-Martinez*, 566 F. App'x 308 (5th Cir. 2014), and *United States v. Cortes-Tolentino*, 577 F. App'x 388 (5th Cir. 2014).

[2] *Perez-Melgarejo*, 552 F. App'x at 328.

[3] *United States v. Baker*, 742 F.3d 618, 620 (5th Cir. 2014) (citing *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).

[4] *United States v. Lopez-Salas*, 513 F.3d 174, 178 (5th Cir. 2008) (citing *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 355-56 (5th Cir. 2005)).

[5] *See Moncrieffe*, 133 S. Ct. at 1693.

[6] As the Supreme Court recognized in *Moncrieffe* when analyzing the same Georgia statute, "we know that Georgia prosecutes this offense when a defendant possesses only a small

No. 13-40924

Application Note to § 2L1.2(b)(1)(A)(i) defines as a "drug trafficking offense" precisely the type of conviction at issue here.

Section 2L1.2(b)(1)(A)(i) provides:

> (b) Specific Offense Characteristic
>
> > (1) Apply the Greatest:
> >
> > If the defendant previously was deported, or unlawfully remained in the United States, after—
> >
> > > (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four . . . .[7]

Application Note to § 2L1.2(b)(1)(A)(i) provides:

> "Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the *possession of a controlled substance* (or a counterfeit substance) *with intent to* manufacture, import, export, *distribute*, or dispense.[8]

The Georgia statute under which Martinez-Lugo was convicted provides:

> (j) (1) It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute,

---

amount of marijuana . . . and that 'distribution' does not require remuneration, *see*, *e.g.*, *Hadden v. State*, 181 Ga. App. 628, 628–629, 353 S.E.2d 532, 533–534 (1987)." *Id.* at 1686.

[7] U.S.S.G. § 2L1.2(b)(1)(A)(i).

[8] U.S.S.G. § 2L1.2(b)(1)(A)(i), Application Note § 1(B)(iv) (emphasis added).

No. 13-40924

> dispense, administer, purchase, sell, or *possess with intent to distribute marijuana*.[9]

The fact that Martinez-Lugo's Georgia conviction has the same label—"possession with intent to distribute"—as an enumerated offense listed in the Guidelines definition of "drug trafficking offense" does not automatically warrant application of the enhancement.[10] Instead, we assume that an enumerated offense refers to the "generic, contemporary meaning" of that offense.[11] The familiar categorical approach then requires us to ensure that the elements of that generic enumerated offense are congruent with the elements of the defendant's prior offense.[12]  In determining the generic, contemporary meaning of an enumerated offense, we consult sources such as state and federal statutes, the Model Penal Code, respected treatises, and dictionaries.[13]

The proper standard of comparison in this categorical inquiry is the elements of the enumerated offense of "possession with intent to distribute,"

---

[9] GA. CODE ANN. § 16-13-30(j)(1) (2002) (emphasis added).  The parties concede that the charging document in the Georgia case narrowed Martinez-Lugo's conviction to the "possession with intent to deliver" offense of this divisible statute.

[10] *See United States v. Sanchez-Sanchez*, --- F.3d ---, 2015 WL 791395, at *1 n.9 (5th Cir. Feb. 24, 2015) ("State-law labels do not control this inquiry[.]" (quoting *United States v. Ramirez*, 557 F.3d 200, 205 (5th Cir. 2009)); *United States v. Ellis-Garcia*, 357 F. App'x 569, 570 (5th Cir. 2009) (explaining that "even if a prior offense is designated as 'robbery' in a state penal code, it may not qualify as a robbery" as that term is used in the Guidelines).

[11] *United States v. Dominguez-Ochoa*, 386 F.3d 639, 643 (5th Cir. 2004) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

[12] *See United States v. Rodriguez*, 711 F.3d 541, 557–58 (5th Cir. 2013) (en banc) (clarifying the categorical inquiry as it applies to non-common law offenses enumerated in the Guidelines).

[13] *Taylor*, 495 U.S. at 590; *United States v. Reyes-Mendoza*, 665 F.3d 165, 166–67 (5th Cir. 2011); *Dominguez-Ochoa*, 386 F.3d at at 644–46.

not the general meaning of the Guidelines term "drug trafficking."[14] That is because the Guidelines definition reflects a determination that certain enumerated offenses—such as possession with intent to distribute—qualify for the "drug trafficking offense" enhancement so long as the offenses are consistent with the generic, contemporary meaning of the enumerated offense that the Commission was contemplating when it adopted the definition.[15]

Martinez-Lugo never argues that the elements of Georgia's possession with intent to distribute offense differ from the elements of the generic, contemporary "possession with intent to distribute" offense.[16] Instead, he argues that *Moncrieffe v. Holder* controls because of its general statement, in the context of discussing the "aggravated felony" provision of the Immigration and Nationality Act (INA), that "[s]haring a small amount of marijuana for no remuneration, let alone possession with intent to do so, does not fit easily into

---

[14] *See, e.g.*, *Reyes-Mendoza*, 665 F.3d at 167 (focusing on whether the state court "manufacturing" offense fit within the generic, contemporary meaning of "manufacturing" offense that was enumerated in definition of "drug trafficking" offense); *see also Rodriguez*, 711 F.3d at 557–58 (comparing state "sexual assault of a child" offense with generic offense of "sexual abuse of a minor" that is enumerated offense for "crime of violence" enhancement); *United States v. Moreno-Florean*, 542 F.3d 445, 456 (5th Cir. 2008) (considering whether California "kidnapping" statute is broader than enumerated "kidnapping" offense listed in definition of "crime of violence").

[15] *See United States v. Gonzales*, 484 F.3d 712, 716 (5th Cir. 2007) (noting that courts should not look to the generic, contemporary meaning of "drug trafficking offense" because the section 2L1.2 commentary defines that term by listing enumerated offenses).

[16] *Cf. United States v. Rodriguez-Negrete*, 772 F.3d 221, 228 (5th Cir. 2014) (finding that sentencing sheet stating that defendant pleaded guilty to "PWID/Dist. Of Cocaine/LSD/other Narcotic drugs in Sch. 1(b) & (c)/Sched. II, 1st offense" satisfied "drug trafficking offense" enhancement under plain language of Sentencing Guidelines and noting defendant did not argue otherwise).

the everyday understand of trafficking."[17] Before responding more fully to this argument, we note that on the required categorical comparison between the elements of Georgia's possession with intent to distribute and those of the generic offense, *Moncrieffe* seems to support the district court's application of the enhancement. In comparing the Georgia offense with the federal possession with intent to distribute statute,[18] *Moncrieffe* recognized that the elements are the same.[19] Thus, Georgia's statute "necessarily proscribe[s] conduct that is an offense under the [Controlled Substances Act]."[20]

If it recognized that Georgia's possession with intent to distribute statute has the same elements as its federal counterpart, why did *Moncrieffe* nonetheless find that a conviction under the Georgia statute did not require mandatory deportation? The answer lies in *Moncrieffe*'s focus on the

---

[17] *Moncrieffe*, 133 S. Ct. at 1693 (some internal quotation marks and ellipsis omitted) (partially quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 566 (2010)).

[18] The federal statute is only one source of the generic, contemporary meaning of "possession with intent to distribute." *See supra* note 13 and accompanying text. The *Moncrieffe* court looked only to the federal Controlled Substances Act's definition for comparison because the Court was considering whether Moncrieffe's prior conviction was an "aggravated felony" under the INA, which defines drug trafficking crimes with reference to the Controlled Substances Act. This is another reason why *Moncrieffe* is not controlling on the Guidelines question which requires a broader survey for the categorical inquiry than just a comparison with the federal statute. Notably, neither the dissent nor Martinez-Lugo, cite any other sources—such as treaties, a consensus of state laws, or the Model Penal Code—that indicate the generic meaning of possession with intent to distribute differs from the Georgia offense.

[19] Because Georgia's statute "makes it a crime to '. . . possess with intent to distribute marijuana,'" and there is "no question that it is a federal crime to 'possess with intent to . . . distribute . . . a controlled substance,' 21 U.S.C. § 841(a)(1), one of which is marijuana, § 812(c)," "the state and federal provisions correspond." *Moncrieffe*, 133 S. Ct. at 1685. And when the government argued that the "'elements' of Moncrieffe's Georgia offense are the same as those of the CSA offense: (1) possession (2) of marijuana (a controlled substance), (3) with intent to distribute it," the Court did not disagree with that premise. *Id.*

[20] *Id.* at 1685.

"aggravated felony" provision of the INA. That statute looks to whether the state offense would constitute a *felony* under the federal drug laws.[21] The Court held that the Georgia conviction did not fulfill that felony requirement because "distributing a small amount of marihuana for no remuneration" is a misdemeanor under federal law.[22] Further demonstrating this limited context in *Moncrieffe*, the two cases it cites in the passage upon which Martinez-Lugo relies are ones interpreting the "aggravated felony" provision of the INA.[23]

We nonetheless recognize the difficulty of this issue and the attraction of Martinez-Lugo's argument in light of the Supreme Court's statement that "[s]haring a small amount of marijuana for no remuneration, let alone possession with intent to do so, does not fit easily into the everyday understanding of 'trafficking,' which ordinarily means some sort of commercial dealing."[24] We conclude, however, that *Moncrieffe* does not control this case given that its holding rested on the specific requirement of the INA's aggravated felony provision requiring that the state offense would constitute a felony under the federal drug laws. In defining the Guidelines enhancement at issue here, the Sentencing Commission did not impose that requirement.

---

[21] *Id.* at 1686, 1683 (citing 8 U.S.C. § 1101(a)(43)(B), which incorporates the definition of drug trafficking crime defined in 18 U.S.C. § 924(c)).

[22] *Id.* at 1688; *see supra* note 6.

[23] *See Carachuri-Rosendo*, 560 U.S. at 570 ("[F]or a state conviction to qualify as an 'aggravated felony' under the INA, it is necessary for the underlying conduct to be punishable as a federal felony."); *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006) (holding that because there "is no reason to think Congress meant to allow the States to supplant its own classifications when it specifically constructed its immigration law to turn on them[,] . . . a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law").

[24] *Moncrieffe*, 133 S. Ct. at 1693 (some internal quotation marks and ellipsis omitted) (partially quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 566 (2010)).

No. 13-40924

Instead it required that the state offense match an enumerated offense such as "possession with the intent to distribute." The Guidelines took a different approach than the INA does in trying to assess the seriousness of the state offense. Section 2L1.2 applies a 16-point enhancement for a prior felony that is a "drug trafficking offense" for which the sentence imposed exceeded 13 months, a 12-point enhancement for a prior felony that is a "drug trafficking offense" for which the sentence imposed was 13 months or less, an 8-point enhancement for an aggravated felony regardless of the sentence imposed, and a 4-point enhancement for any other felony.[25] The focus is thus both on the length of the sentence and whether the conviction was a felony under state law.

As the dissent notes, the Guidelines commentary defines the 8-point "aggravated felony" enhancement to incorporate the INA's definition of aggravated felony at issue in *Moncrieffe*. The dissent then contends that it is anomalous to impose the greater 16-point enhancement for a Georgia conviction when it would not qualify for the lesser 8-point enhancement under *Moncrieffe*. This analysis misses a few points. First, inclusion of a separate "aggravated felony" enhancement in Section 2L1.2 arguably supports our view that the INA-focused *Moncrieffe* analysis does not control the distinct "drug trafficking" enhancement.[26] Second, the existence of a drug trafficking offense is not enough to result in the 16-point enhancement; the offense must have

---

[25] U.S.S.G. § 2L1.2(b)(1)(A)–(D).

[26] *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (explaining that when a drafter "uses certain language in one part of [a legal provision] and different language in another, the court assumes different meanings were intended").

10

No. 13-40924

been serious enough to have actually resulted in a sentence of greater than 13 months. Third, the INA's aggravated felony provision sweeps in twenty categories of crimes—including receipt of stolen property, failure to appear, and gambling and prostitution offenses[27]—that the Sentencing Commission may have wanted to treat as less serious than drug trafficking offenses. Whether that determination is the best policy decision or not, it is one to which we owe deference.[28] And of course, with the Guidelines now being advisory, sentencing courts have discretion to account for mitigating factors, including the actual conduct involved in prior offenses, in determining a sentence that is "sufficient, but not greater than necessary," to reflect the statutory sentencing factors.[29]

## CONCLUSION

For these reasons, we decline to extend *Moncrieffe* to the different scheme embodied in the Guidelines absent clear direction to do so. Under the plain language of § 2L1.2(b)(1)(A)(i) and its Application Note, a "drug trafficking offense" includes the offense of "possession with intent to distribute." Under a straightforward application of the categorical approach, the Georgia offense under which Martinez-Lugo was convicted has the same elements as the generic possession with intent to distribute offense.

---

[27] 8 U.S.C. § 1101(a)(43)(G), (J), (K), (Q), (T).

[28] *See Stinson v. United States*, 508 U.S. 36, 45 (1993) ("The Commission, after all, drafts the guidelines as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the Guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute.").

[29] 18 U.S.C. § 3553(a).

11

No. 13-40924

We therefore AFFIRM the sentence.

No. 13-40924

JAMES L. DENNIS, Circuit Judge, dissenting:

In *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), the Supreme Court held that a conviction under a Georgia criminal statute that criminalizes the gratuitous sharing of a small amount of marijuana, or possession with the intent to do so, does not categorically constitute "illicit trafficking in a controlled substance" and thus is not an "aggravated felony" for purposes of disqualifying a non-citizen for discretionary relief under the Immigration and Nationality Act (INA). The sole issue on appeal here is whether Martinez-Lugo's prior conviction under the same Georgia statute constitutes a "drug trafficking offense" justifying the imposition of a sixteen-level offense enhancement—the highest possible sentencing enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2L1.2(b). Applying the principles and reasoning of *Moncrieffe*, I conclude that it does not.

Although the INA and U.S.S.G. § 2L1.2(b) are not directly coextensive, their application involves substantially similar principles and concepts that must be carefully applied to avoid sentencing outcomes that are inconsistent with the plain text and purpose of U.S.S.G. § 2L1.2. Further, our circuit precedent in U.S.S.G. cases requires that we apply the same categorical approach that the Court used in *Moncrieffe*; thus we ought to carefully heed, rather than disregard, the teachings of the *Moncrieffe* Court in that respect. *Moncrieffe* makes clear that "a drug trafficking offense" does not include the sharing of a small amount of marijuana for no remuneration, or possession thereof with intent to do so. Consequently, a proper and full application of the categorical approach here demonstrates that, similar to the situation in *Moncrieffe*, the Georgia crime of conviction does not constitute a drug

13

trafficking offense.  Accordingly, Martinez-Lugo's prior Georgia conviction does not constitute a federal "drug trafficking offense" and, therefore, may not be used to enhance his sentence under U.S.S.G. § 2L1.2.  I therefore respectfully dissent from the majority's decision and opinion to the contrary.

## I.

## A.

Martinez-Lugo pleaded guilty to being unlawfully present in the United States following removal, in violation of 8 U.S.C. § 1326(a).  The district court determined that his base offense level was eight pursuant to U.S.S.G. § 2L1.2(a) and, after overruling Martinez-Lugo's objection, found that he was subject to a sixteen-level offense enhancement under § 2L1.2(b)(1)(A)(i) based on his prior Georgia conviction for a crime designated as "possession with intent to distribute marijuana."  With the sixteen-level enhancement, the district court calculated Martinez-Lugo's Guideline advisory range as 46-57 months of imprisonment and sentenced him to 46 months in prison.

Section 2L1.2(b)(1)(A)(i) instructs, in relevant part, that district courts increase a defendant's offense level by sixteen if "the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months."  USSG § 2L1.2(b)(1)(A)(i).  The "Application Note" to §2L1.2 defines a "drug trafficking offense" as, *inter alia,* "an offense under federal, state, or local law that prohibits the . . . possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 2L1.2(b)(1)(A)(i), Application Note § 1(B)(iv).

No. 13-40924

In 2002, Martinez-Lugo pleaded guilty to a Georgia felony offense under Ga. Code Ann. § 16-13-30(j)(1), which provides that:

> It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana.

The charging documents presented to the district court established that Martinez-Lugo pleaded guilty to possession with intent to distribute marijuana, and was sentenced to serve three years in confinement and two years on probation. The Georgia code defines "distribute" as follows: "to deliver a controlled substance, other than by administering or dispensing it." Ga. Code Ann. § 16-13-21(11). As the Supreme Court held in *Moncrieffe*, Georgia case law reveals that this is a broad definition and that distribution does not necessarily require a sale. *See Dorsey v. State*, 212 Ga. App. 479, 480, 441 S.E.2d 891, 892 (1994) ("[A] distribution may or may not be a sale."); *see also Capers v. State*, 273 Ga. App. 427, 428, 615 S.E.2d 126, 128 (2005) ("[T]he offense of distribution of [a controlled substance] does not require that the offender receive a payment.").

In *Moncrieffe*, the Court analyzed whether possession with intent to distribute under Ga. Code Ann. § 16-13-30(j)(1) constitutes an "aggravated felony" under the Immigration and Nationality Act (INA). 133 S. Ct. at 1682-83. The relevant INA provision, 8 U.S.C. § 1101(a)(43), defines an aggravated felony as, *inter alia*, a conviction for "illicit trafficking in a controlled substance," as defined in 18 U.S.C. § 924(c)(2). *Id.* at 1683. Section 924(c)(2), in turn, defines "drug trafficking crime" as, *inter alia*, crimes that qualify as felonies punishable under the federal Controlled Substances Act (CSA). *Id.* A

15

felony under the CSA is, generally, any offense listed therein that is punishable by imprisonment for more than one year. *Id.* It may be a felony under the CSA to possess with the intent to distribute a controlled substance (including marijuana); however, this offense is punishable only as a misdemeanor under the CSA if it involves only the distribution of "a small amount of marihuana for no remuneration." *Id.*; *see* 21 U.S.C. §§ 841(b), 844. In other words, if the crime involves only a small amount of marijuana, without an exchange of money or other consideration, then the offense is treated as simple drug possession and characterized as a misdemeanor offense under the CSA. *Id.* at 1686.

Examining the manner in which Georgia courts have prosecuted individuals under Ga. Code Ann. § 16-13-30(j)(1), the *Moncrieffe* Court concluded that because a defendant under this Georgia statute may be prosecuted for giving away a small amount of marijuana for no remuneration, it is not categorically an aggravated felony. The Court explained that

> the fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved. It is possible neither was; we know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, *see, e.g., Taylor v. State*, 260 Ga. App. 890, 581 S.E.2d 386, 388 (2003) (6.6 grams), and that "distribution" does not require remuneration, *see, e.g., Hadden v. State*, 181 Ga. App. 628, 628–629, 353 S.E.2d 532, 533–534 (1987).

*Id.* at 1686. Accordingly, "Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to

16

an offense punishable as a felony," and thus, "under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony." *Id.* at 1686-87. In conclusion, the Court then warned that courts should be wary of the Government's attempts to classify a low-level drug offense as "illicit trafficking in a controlled substance" and thus an "aggravated felony," reasoning that to classify "[s]haring a small amount of marijuana for no remuneration, let alone possession with intent to do so," as a trafficking offense "defies 'the commonsense conception' of th[at] term[]" because "the everyday understanding of 'trafficking' . . . ordinarily means some sort of commercial dealing." *Id.* at 1693 (some internal quotation marks and ellipses omitted). Thus, under the categorical approach and the teachings of *Moncrieffe*, it would be error to conclude that Martinez-Lugo's conviction under Ga. Code Ann. § 16-13-30(j)(1), which criminalizes conduct such as the social sharing or giving away of small amounts of marijuana for no remuneration, is necessarily and categorically a drug *trafficking* offense.

## B.

There is an ironic and illogical inconsistency in the ramifications produced by the majority's decision today. Under U.S.S.G. § 2L1.2(b), defendants convicted of illegal reentry into the United States are exposed to greater sentences if they reentered the country after having been convicted of prior crimes. The section operates on a graduated scale: the more serious the prior conviction, the greater the increased sentencing exposure. After the majority's decision, that structure comes crumbling down. For the reasons that will be explained below, *Moncrieffe* dictates that Martinez-Lugo's prior Georgia conviction is *not* serious enough to qualify for the relatively minor eight-level

enhancement under U.S.S.G. § 2L1.2(b)(1)(C).  And yet, according to the majority of this panel, Martinez-Lugo's prior Georgia conviction *is* serious enough to invoke the sixteen-level enhancement under § 2L1.2(b)(1)(A)(i), the highest enhancement available under this provision.

Under U.S.S.G. § 2L1.2(b)(1)(C), a defendant previously deported after conviction of an "aggravated felony" receives an eight-level offense enhancement.  The Sentencing Commission defines an aggravated felony for purposes of § 2L1.2(b)(1)(C) as the "meaning given that term in *8 U.S.C. § 1101(a)(43)*"—the INA provision that the Supreme Court analyzed in *Moncrieffe.  See* U.S.S.G. § 2L1.2, Application Note (3)(A) (emphasis added); *Moncrieffe*, 133 S. Ct. at 1683 (analyzing 8 U.S.C. § 1101(a)(43) to determine whether Moncrieffe was previously convicted of an "aggravated felony" under the INA).  Thus, Martinez-Lugo's prior conviction under the identical Georgia statute cannot trigger an eight-level offense enhancement under U.S.S.G. § 2L1.2(b)(1)(C) for a prior aggravated felony conviction—*Moncrieffe* held that this Georgia statute is not an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43).  It defies logic, then, to conclude that although Martinez-Lugo's prior Georgia conviction could not amount categorically to an aggravated felony—and thus cannot trigger an *eight-level* enhancement under U.S.S.G. § 2L1.2—that his prior conviction, possibly for sharing a small amount of marijuana gratuitously, nonetheless categorically constitutes a "drug trafficking offense" worthy of a *sixteen-level* offense enhancement under U.S.S.G. § 2L1.2.

The majority attempts to justify the anomaly of imposing such a harsh sentencing enhancement on individuals convicted under a statute that

No. 13-40924

penalizes gratuitous sharing of small amounts of marijuana by noting that the ultimate legal question presented in this case—whether an enhancement under U.S.S.G. was properly imposed—is different from the question at issue in *Moncrieffe*—whether the immigration courts properly found that the petitioner was previously convicted of an "aggravated felony" under the INA, and that the Sentencing Commission is free to treat convictions of "drug trafficking offenses" more harshly than "aggravated felony" convictions, regardless of whether "that determination is the best policy decision or not." Maj. Op., at 11.  However, upholding a sixteen-level offense enhancement for a prior conviction under a statute that the Supreme Court has explained may be violated by mere social sharing of small amounts of marijuana for no remuneration flouts the very purpose of this U.S.S.G. provision.  As this court has explained, "[t]he purpose of the sixteen-level enhancement is to ensure that a defendant who reenters the United States illegally after having committed a *serious crime* is punished more severely than a defendant who reenters the country illegally without having committed a serious crime." *United States v. Bustillos-Pena*, 612 F.3d 863, 867 (5th Cir. 2010) (emphasis added).  The Court in *Moncrieffe* makes it clear that Martinez-Lugo's prior Georgia conviction penalizes conduct that may amount to no more than social sharing of a small amount of marijuana for no remuneration—a crime punishable as a misdemeanor under federal law, and thus not "serious" enough to warrant even an eight-level offense enhancement as an aggravated felony. The majority nonetheless condones the sixteen-level enhancement here, which is imposed upon defendants who have been deported after being convicted of very serious crimes, including, *inter alia*, human trafficking offenses and

19

national security or terrorism offenses, *see* U.S.S.G. § 2L1.2 (b)(1)(A), and is double that which is imposed upon defendants with prior "aggravated felony" convictions.  *See* U.S.S.G. § 2L1.2 (b)(1)(A)-(C).

By requiring sentencing courts to treat non-commercial social users of marijuana like serious drug traffickers, the majority's decision creates an untenable inconsistency that is irreconcilable with *Moncrieffe.*

## II.

The majority might have avoided its error had it properly and fully applied the categorical approach required by circuit precedents and elaborated upon in *Moncrieffe*.

The Application Notes corresponding to U.S.S.G. § 2L1.2 provide a list of enumerated offenses that qualify as "drug trafficking" offenses for purposes of § 2L1.2(b)(1)(A), including the possession with intent to distribute a controlled substance.  The majority correctly acknowledges that the mere "fact that Martinez-Lugo's Georgia conviction has the same label—'possession with intent to distribute'—as an enumerated offense listed in the Guidelines definition of 'drug trafficking offense' does not automatically warrant application of the enhancement."  Maj. Op., at 6.  Our precedents plainly instruct that rather than allowing state-law labels to control, "[w]e employ a categorical approach to determine whether a prior conviction qualifies as a drug trafficking offense under § 2L1.2." *United States v. Henao-Melo*, 591 F.3d 798, 802 (5th Cir. 2009); *see also United States v. Teran-Salas*, 767 F.3d 453,

No. 13-40924

458 (5th Cir. 2014); *United States v. Reyes-Mendoza*, 665 F.3d 165, 168 (5th Cir. 2011); *United States v. Garza-Lopez*, 410 F.3d 268, 273 (5th Cir. 2005).[1]

## A.

Under the *Taylor-Shepard*[2] categorical approach, "we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding [drug trafficking offense]." *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)).  To determine the "generic" federal definition of a crime we must view the federal offense "in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Moncrieffe*, 133 S. Ct.

---

[1] Our sister circuits likewise apply the categorical approach to determine whether a prior state law conviction constitutes a federal offense for purpose of sentencing enhancement under the Guidelines.  *See, e.g.*, *United States v. Torre-Jimenez*, 771 F.3d 1163, 1165 (9th Cir. 2014) ("We apply the categorical and modified categorical approaches described in *Taylor*, . . . to determine whether a defendant's prior conviction satisfies U.S.S.G. § 2L1.2(b)(1)(A)."); *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011) ("Courts employ a categorical approach in determining whether a prior conviction will lead to a sentence enhancement under the Sentencing Guidelines."); *United States v. Palomino Garcia*, 606 F.3d 1317, 1328 (11th Cir. 2010) ("Although *Taylor* and *Shepard* were ACCA cases, we have employed their 'categorical approach' in determining whether a prior offense qualifies for an enhancement under the Guidelines."); *United States v. Torres-Romero*, 537 F.3d 1155, 1158 (10th Cir. 2008) ("When a defendant contests whether his prior conviction constitutes a drug trafficking offense the sentencing court is generally required to follow the categorical approach adopted in *Taylor* . . . and *Shepard*"); *United States v. Montanez*, 442 F.3d 485, 492 (6th Cir. 2006) (applying the categorical approach and reasoning that "[h]ow a state titles its statutory provisions, however, is not determinative of what actual statute a defendant was convicted under for federal sentencing purposes."); *United States v. Fernandez-Antonia*, 278 F.3d 150, 161-62 (2d Cir. 2002) ("A sentencing court employs a 'categorical approach' in determining whether a conviction under state law fits within the federal sentencing guidelines and thus merits an offense level enhancement.").

[2] *See Taylor v. United States*, 495 U.S. 575, 598-99 (1990); *Shepard v. United States*, 544 U.S. 13, 24-26 (2005) (plurality opinion).

at 1684.  We use a "plain-meaning approach when determining the 'generic, contemporary meaning' of non-common-law offense categories enumerated in federal sentencing enhancements." *United States v. Rodriguez*, 711 F.3d 541, 552 (5th Cir. 2013) (en banc).

"[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily' involved . . . facts equating to [the] generic [federal offense]." *Moncrieffe*, 133 S. Ct. at 1684 (citing *Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality opinion)).  "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)); *see also United States v. Carrasco-Tercero*, 745 F.3d 192, 198 (5th Cir. 2014) (quoting *Moncrieffe*, 133 S. Ct. at 1685); *Sarmientos v. Holder*, 742 F.3d 624, 628 (5th Cir. 2014).[3]  As we have previously explained on review of a district court's

---

[3] If the pertinent state statute at issue has disjunctive elements, a court applies a modified categorical approach to ascertain which of the disjunctive elements formed the basis of the conviction. *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012).  In making this determination, a court may consider limited sources, such as the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).  If the statute cannot be narrowed, a court considers "whether the least culpable act constituting a violation of that statute constitutes" a drug trafficking offense for purposes of § 2L1.2(b)(1)(A)(i). *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008) (internal quotation marks and citations omitted).  If the modified categorical approach does narrow the statute to a specific subsection, then the court engages in an inquiry as if applying the basic categorical approach: it compares the elements of the narrowed statute to the "generic crime" to determine whether it qualifies for enhancement, looking to the

sentencing enhancement pursuant to § 2L1.2(b)(1), the essential inquiry involved requires us to determine "whether the least-culpable act that would violate [the state criminal statute] would also qualify as 'drug trafficking' for purposes of § 2L1.2." *Reyes-Mendoza*, 665 F.3d at 167. "If [the state law criminal statute] is broad enough to criminalize conduct that would not constitute trafficking under § 2L1.2, then the sentence should not have been enhanced." *Id.*

Accordingly, I cannot agree with the majority's contention that *Moncrieffe* supports the district court's sentencing enhancement here merely because the Court in *Moncrieffe*, at first, found that the Georgia state law's elements, without benefit of the state courts' interpretation of them, superficially appear to be consistent with the elements of a CSA offense. *See* Maj. Op., at 8. Certainly, the Court in *Moncrieffe* found that "[t]here is no question that it is a federal crime to 'possess with intent to . . . distribute . . . a controlled substance,' 21 U.S.C. § 841(a)(1), one of which is marijuana, § 812(c)." *Moncrieffe*, 133 S. Ct. at 1685. However, that finding did not end the *Moncrieffe* Court's inquiry, nor may it end ours. *Id.* ("So far, the state and federal provisions correspond. But this is not enough[.]"). The *Moncrieffe* Court concluded only that the Georgia law corresponds to *a* crime penalized by the CSA and says nothing to suggest that this finding alone signifies that the Georgia crime is categorically a "drug trafficking" offense. As we have

---

elements of the crime, not the underlying facts. *See Descamps*, 133 S. Ct. at 2283. As the Court has explained, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute." *Id.* at 2285 (citations omitted).

explained, "[n]ot all felony drug offenses are drug trafficking offenses." *Henao-Melo*, 591 F.3d at 805. It is undisputed that the CSA also penalizes simple possession of a controlled substance, *see* 21 U.S.C. § 844(a), which is excluded from the Guideline's definition of a "drug trafficking offense." *See* U.S.S.G. § 2L1.2; *see also Henao-Melo*, 591 F.3d at 805 (citing *United States v. Caicedo–Cuero*, 312 F.3d 697, 707 (5th Cir.2002) ("[The definition of 'drug trafficking offense' in § 2L1.2] clearly excludes simple possession of a controlled substance.")). Indeed, ending the inquiry prematurely, after only a superficial comparison of the offenses' elements alone, ignores both this court's and the Supreme Court's instructions that we must analyze Georgia state law to determine how the state courts interpret their own statute and whether the state-law offense criminalizes conduct broader than the generic federal offense. *See Moncrieffe*, 133 S. Ct. at 1684; *see also Reyes-Mendoza*, 665 F.3d at 169 (analyzing California courts' interpretation of the term "manufacture" to determine whether the defendant's prior California conviction for manufacturing a controlled substance in violation of Section 11379.6 of the California Health and Safety Code is categorically a drug trafficking offense under U.S.S.G. § 2L1.2).

**B.**

Applying the *Taylor-Shepard* categorical approach to this case, we should conclude that the Georgia statute under which Martinez-Lugo was convicted criminalizes conduct that does not categorically amount to "drug trafficking" and that his sentence, improperly enhanced under U.S.S.G. § 2L1.2(b) by sixteen offense levels for conviction of a prior drug trafficking offense, should therefore be vacated.

Preliminarily, because the Georgia statute at issue is a divisible one, the district court properly consulted the charging documents and the final judgment to determine which subsection of the Georgia statute Martinez-Lugo was convicted under, and concluded he was convicted of possession with intent to distribute marijuana.  From there, we apply the categorical approach and determine whether, "assum[ing] the defendant committed the least culpable act to satisfy the conviction," the elements of the Georgia conviction for possession with intent to distribute marijuana are necessarily encompassed within the definition of a "drug trafficking offense" under § 2L1.2.  *See Carrasco-Tercero*, 745 F.3d at 198 (quoting *Moncrieffe*, 133 S. Ct. at 1685).

In other words, we must compare the "least-culpable act" that would constitute possession with intent to distribute under Ga. Code Ann. § 16-13-30(j)(1) and determine whether such conduct "would also qualify as 'drug trafficking' for purposes of § 2L1.2." *Reyes-Mendoza*, 665 F.3d at 167. *Moncrieffe* makes clear that Martinez-Lugo's prior conviction—possession with intent to distribute under Ga. Code Ann. § 16-13-30(j)(1)—penalizes the possession of small amounts of marijuana with the intent to distribute or give away marijuana for no remuneration. *See Moncrieffe*, 133 S. Ct. 1686 ("[W]e know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, *see, e.g., Taylor v. State*, 260 Ga.App. 890, 581 S.E.2d 386, 388 (2003) (6.6 grams), and that 'distribution' does not require remuneration, *see, e.g., Hadden v. State*, 181 Ga.App. 628, 628–629, 353 S.E.2d 532, 533–534 (1987).").  Thus, *Moncrieffe* dictates the first step of our categorical analysis here because the Court found that defendants in Georgia may be convicted of possession with intent to distribute marijuana under Ga.

No. 13-40924

Code Ann. § 16-13-30(j)(1) for the giving away or social sharing of marijuana for no remuneration—the "least culpable act" punishable under this provision. *Id.*

Next, we must determine whether "even th[e]se acts are encompassed by the generic federal offense." *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Johnson*, 559 U.S. at 137). In defining the generic federal offense, we use a "plain-meaning approach." *See Rodriguez*, 711 F.3d at 552. *Moncrieffe* instructs that the plain-meaning or "everyday understanding of 'trafficking,' . . . means some sort of commercial dealing." *Moncrieffe*, 133 S. Ct. at 1693. It follows that the plain meaning of the generic federal drug *trafficking* offense of possession with intent to distribute a controlled substance involves possession with the intent to distribute for remuneration or with the intent to engage in some form of commercial dealing. Martinez-Lugo's conviction under Ga. Code Ann. § 16-13-30(j)(1), which criminalizes conduct that does not necessarily amount to the distribution of marijuana for remuneration, is therefore broader than the generic, contemporary meaning of a drug *trafficking* offense of possession with intent to distribute and therefore cannot support the sixteen-level sentence enhancement under § 2L1.2(b)(1)(A)(i).

Despite the majority's position to the contrary, the Court has repeatedly advised that we must consider the "everyday understanding" of the term "trafficking" when determining whether a state law is a categorical match with an enumerated "trafficking" offense, and that we should be wary of the Government's arguments that low-level drug offenses, such as sharing small amounts of marijuana for no remuneration, are "aggravated felonies" or "trafficking" offenses. *See Moncrieffe*, 133 S. Ct. at 1693 (reasoning that the

26

Government's attempt to classify low-level drug offenses as "illicit trafficking" offenses and thus "aggravated felonies" is an approach that "defies the commonsense conception of these terms") (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010) (quoting *Lopez v. Gonzales*, 549 U.S. 47, 56, (2006))) (internal quotation marks omitted).    Rather than ignore the term "trafficking" when we analyze whether the Georgia statute here is a drug trafficking offense, "[t]he everyday understanding of 'trafficking' should count for a lot here . . . [a]nd ordinarily 'trafficking' means some sort of commercial dealing." *Lopez*, 549 U.S. at 43; *see also Carachuri-Rosendo*, 560 U.S. at 573. To decline to consider the meaning of the term "trafficking" in determining the commonsense, generic meaning of the drug *trafficking* offense of possession with intent to distribute marijuana would ignore the "the cardinal rule that statutory language must be read in context." *Lopez*, 549 U.S. at 56; *see also Jones v. United States*, 527 U.S. 373, 389 (1999) ("Statutory language must be read in context and a phrase 'gathers meaning from the words around it.'") (internal citation omitted).    Here, the majority stops short of reading the relevant Guideline provision as a whole and thus fails to acknowledge the ordinary, everyday meaning of the drug trafficking offense of possession with intent to distribute as requiring some sort of commercial dealing, which is conveyed by inclusion of the term "trafficking."    As the Court has explained, "our interpretive regime reads whole sections of a statute together to fix on the meaning of any one of them[.]" *Id.*  The majority has not provided a satisfactory reason that these same considerations and principles of statutory construction do not apply to a U.S.S.G. case, like this case, where we are tasked with

27

No. 13-40924

determining whether a prior state-law offense is categorically a "drug trafficking" offense.

**\* \* \***

In sum, applying the categorical approach, as we must, I would conclude that Martinez-Lugo's prior Georgia conviction, which may have involved nothing more than sharing a small amount of marijuana with no intention to seek remuneration, was not a drug trafficking offense, and therefore did not warrant the sixteen-level offense enhancement under U.S.S.G. § 2L1.2(b), which ultimately led to his sentence of 46 months of imprisonment. In finding to the contrary, the majority fails to fully and properly apply the categorical approach, misreads and disregards the principles and holdings of *Moncrieffe*, and condones an application of U.S.S.G. § 2L1.2 that is inconsistent with the clear purpose of that provision. I therefore respectfully dissent.